UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| COLTON SIMPSON,<br><br>        Petitioner,<br><br>v.<br><br>MATTHEW CATES, SECRETARY OF CDCR, AND SCOTT MCEWAN, WARDEN,<br><br>        Respondents. | Case No. EDCV 11-1312 SVW (PJW)<br><br>ORDER ACCEPTING IN PART REPORT AND RECOMMENDATION OF UNITED STATES MAGISTRATE JUDGE AND SEPARATE ORDER |

Pursuant to 28 U.S.C. § 636, the Court reviewed the petition, the record, the Report and Recommendation of the United States Magistrate Judge, and Petitioner's Objections to the Report and Recommendation. The Court accepts the findings and recommendation of the Magistrate Judge contained in Parts I, II, III, IV(A), IV(C) through IV(L), and V of the Report and Recommendation. Although the Court agrees with the Report and Recommendation's conclusions in Part IV(B), the Court files a separate order replacing this section.

**B.    Petitioner's Claim that the Police Procedure Used to Identify Him Created a Substantial Likelihood of Misidentification Does Not Warrant Habeas Relief**

**1. Analysis**

*Perry v. New Hampshire* established a two-step inquiry for determining whether a pretrial identification violated the Due Process rights of the person identified. *Perry v. New Hampshire*, 132 S. Ct 716, 733 (2012). First, a court determines whether the police used identification procedures that were unnecessarily suggestive. *Id.* In the second step, a court examines the totality of the circumstances to determine whether there was a substantial likelihood of misidentification. *Id.* Courts consider five factors while assessing the totality of the circumstances: "[1] the opportunity of the witness to view the criminal at the time of the crime, [2] the witness' degree of attention, [3] the accuracy of the witness' prior description of the criminal, [4] the level of certainty demonstrated by the witness at the confrontation, and [5] the length of time between the crime and the confrontation." *Neil v. Biggers*, 409 U.S. 188, 199-200 (1972).

Here, the procedure used by Investigator Felt did not violate Petitioner's constitutional rights. Assuming *arguendo* that the identification procedure was unnecessarily suggestive because it involved only one photograph and was accompanied with information linking Petitioner to the rented Taurus, *see Simmons v. United States*, 390 U.S. 377, 383 (1968), the procedure still did not create a substantial likelihood of misidentification under the totality of the circumstances.

Admittedly, the first factor suggests unreliability. The deputies testified that they observed Petitioner twice during the car chase — they both saw him in their rearview mirror during the chase, and Pierson saw Petitioner exiting his car. The rearview mirror does not offer an ideal vantage point, especially during a high-speed pursuit. And Petitioner was only observable for a few seconds (albeit in broad daylight) when he got out of his car. Although adequate, the officers' opportunity to view Petitioner was less than optimal.

The remaining factors, in contrast, indicate that the identification was reliable. The

officers' training ensures that they paid sufficient attention to Petitioner's appearance. *See Manson v. Brathwaite*, 432 U.S. 98, 115 (1977). Their identification was immediate and unequivocal. *See Hunter v. McCollum*, No. 07-21372CIV, 2011 WL 4552401, at *15 (S.D. Fla. Sept. 29, 2011). And they identified Petitioner while their memories were fresh[3] — within twenty-four hours of observing him. *See United States v. Maloney*, 513 F.3d 350, 356 (3d Cir. 2008).[4]

Given this balance, the state court did not unreasonably apply clearly established Supreme Court law. Indeed, the circumstances here did not carry a greater risk of misidentification than those found reliable by the Supreme Court and Ninth Circuit in other cases. *See Perry v. New Hampshire*, 132 S. Ct. 716 (2012) (permitting identification even though eyewitness saw a single person standing next to a police officer at night from a significant distance and was unable to identify the same person in a six-person line up at a later date); *Holden v. State of Alaska*, 21 F.3d 1113 (9th Cir. 1994) (permitting identification despite procedure tainted by police comments because witness made identification within hours of assault, had good look at assailant, and was focused on assailant). Nor were they as problematic as identifications ruled inadmissible. *See Foster v. California*, 394 U.S. 440 (1969) (holding identification inadmissible because defendant was significantly shorter than other members of a line-up, was only person re-used through multiple line-ups, and police officers pushed for his

---

[3] Petitioner questions the accuracy of the officers' recollections by citing seemingly contradictory portions of their testimony. He points out that Marks never observed Petitioner leave his vehicle, but Pierson testified that he did. The officers, however, explained this incongruity: Marks testified that he was trying to pull the shotgun from the car's holster (so his head was turned away) when Pierson says Petitioner left his vehicle. Thus, Marks offered a reasonable explanation for why he, unlike Pierson, never saw Petitioner outside his vehicle. As a result, the Court lacks any evidence suggesting the officers could not accurately recall what they observed.

[4] The other factor — the accuracy of the witnesses' descriptions — is neutral. The officers' descriptions of Petitioner were accurate, but they were unspecific and failed to mention identifying features like the scar on Petitioner's head.

1 identification despite tentative statements from the victim); *Heath v. Hill*, 397 F. App'x 308 (9th
2 Cir. 2010) (finding identification inadmissible after impermissibly suggestive procedure because
3 only *Biggers* factor supporting reliability was witness' certainty). Therefore, Petitioner failed to
4 carry his burden under AEDPA, and the Court cannot afford him habeas relief on this claim.

  Dated: April 28, 2015

  _____
  STEPHEN V. WILSON
  United States District Judge